IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WALTER DUANE WHITE,**

      **Petitioner,**

   **v.**                              **CIVIL ACTION NO. 1:07cv1**
                                            **(Judge Keeley)**

**WARDEN JOYCE FRANCIS,**

      **Respondent.**

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On January 4, 2007, the *pro se* petitioner, Walter White ["White"], an inmate at FCI-Gilmer[1], filed an Application for Habeas Corpus Pursuant to 28 U.S.C. §2241, in which he challenged prison disciplinary proceedings and also raised constitutional claims under the First, Eighth and Fourteenth Amendments. On March 2, 2007, the undersigned issued a Report and Recommendation in which I recommended that White's claims regarding the conditions of his confinement, including his claims pertaining to job assignment, retaliation, denial of access to the courts, cruel and unusual punishment, trespass, conversion, and inverse condemnation be dismissed without prejudice to his right to raise those issues in a civil rights complaint. However, because White alleged that he lost good time credits as a result of challenged disciplinary proceedings, I

---

[1] White has since been transferred to the USP in Lewisburg, Pennsylvania. However, jurisdiction is determined at the time an action is filed, and subsequent transfers of prisoners outside the jurisdiction in which they filed actions do not defeat personal jurisdiction. U.S. v. Edwards, 27 F.3d 564 (4th Cir. 1994).

further recommended that White's disciplinary claims be served and that the respondent be directed to show cause why the writ should not be granted. By Order dated June 1, 2007, the Court affirmed the Report and Recommendation and directed that White's claims regarding the disciplinary proceedings be served. On July 2, 2007, the respondent filed his response to the Order to Show Cause. Along with the response, the respondent provided the Court with several exhibits. On July 20, 2007, White filed a reply. This matter is pending before me for an initial review and Report and Recommendation pursuant to LR PL P 83.09.

## II. FACTS[2]

### A. Incident Report No. 1479211

On June 16, 2006, an incident report was prepared by Melissa Frye ("Frye"), the food service administrative assistant at FCI Gilmer, charging White with a violation of Prohibited Act Code 203, threatening another with bodily harm. Frye indicated in the report that at approximately 7:40 a.m., on June 16, 2006, White entered her office and told her that he could not work in Food Service because he had hepatitis, and he was not going to put other people in danger by being around food. Frye informed White that he had been cleared to work in Food Service and that he worked in the dining area and had no direct contact with the food that was being served to other inmates. White then informed Frye that he had medical and psychiatric conditions and that he would not work in Food Service. Frye then told White that he either had to work or go to the Special Housing Unit ("SHU") for refusing to work. White then glared at Frye and told her to "go ahead and hit that button because I'm not working." Frye indicated in her report that her perception was that her

---

[2]White's SENTRY Inmate Discipline History reveals he has three discipline reports on his record. (Doc. 26-2, p.1). White already has pending litigation challenging Incident Report Number 1512454 which is pending before the Honorable John P. Bailey. See 3:07cv8. Therefore, this Report and Recommendation addresses only Incident Numbers 1479139 and 1479211.

2

physical well being was in jeopardy based on that statement by White. (Doc. (26-2, p. 4). A copy of the incident report was delivered to White that same day. (Doc. 26-2, p. 5).

The Unit Disciplinary Committee ["UDC"] referred the charges to the Disciplinary Hearing Officer ["DHO"] for further hearing. The UDC recommend that if White were found guilty, that sanctions should include loss of good conduct time, placement in disciplinary segregation, and the loss of his job. (Doc. 26-2, p. 6).

By hearing form, dated June 18, 2006, White was advised of rights with regard to the disciplinary hearing. Dunmore indicated that he did not wish to have a staff representative nor did he wish to call witnesses. (Doc. 26-2, p. 7).

The DHO hearing was held on June 21, 2006. After White acknowledged that he understood his due process rights, the DHO read aloud section 11 of the incident report and asked White if he would like to make a statement. White stated, "I never threatened her. I was just telling her what she needed to do and have me removed from Food Service. I have Hepatitis and cannot work there," (Doc. 26-3, p. 1) .

The DHO then found that White did not commit the act as charged (threatening), but instead found that White committed the act of Refusing to Accept a Program Assignment, Code 306, when he refused to work in Food Service. The DHO sanctioned White to 15 days of disciplinary segregation and Disallowance of 14 days of Good Conduct Time. (Doc. 26-3, p 2).

**B. Incident Report Number 1479139**

On June 16, 2006, an incident report was prepared by Officer Cain ["Cain"] charging White with a violation of Prohibited Act Code 224, assaulting any person. Cain indicated that while serving the noon meal to inmates in the SHU, he noticed that White had placed his food tray on the food slot door. When Cain questioned why his tray was on the foot slot door, White stated, "I don't

want that f***ing s**t." Before Cain could get to the door to remove the tray, White tossed the tray across the range and struck Cain in the right ankle. (Doc. 26-3, p. 5). A copy of the Incident Report was delivered to White that day. (Id. at 6).

The UDC referred the charges to the DHO for further hearing. The UDC recommended that if the DHO found White guilty, he be sanctioned with the loss of Good Conduct Time, commissary privileges, and disciplinary segregation. (Doc. 26-3, p. 7).

By hearing form, dated January 28, 2006, White was advised of his rights with regard the disciplinary hearing. White indicated that he did not wish to have a staff representative but that he did wish to call one witness. (Doc. 26-4, p. 1).

The DHO hearing was held on June 21, 2005. The DHO found that White had committed the prohibited act of code 224, Assault, as charged. The DHO sanctioned White to 30 days Disciplinary Segregation, Disallowance of 27 days Good Conduct Time and Loss of Commissary for 6 months. (Doc. 26-4, pp. 4-5).

### III. ANALYSIS

Prison disciplinary proceedings are not criminal prosecutions, and prisoners do not enjoy "the full panoply of due process rights due a defendant in such [criminal] proceedings. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Where, as here, a prison disciplinary hearing may result in the loss of good time credit, Wolff held that an inmate must receive (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-567. In the instant case, the petitioner does not allege that the disciplinary proceedings violated procedural protocol. Rather, he argues that "there was not sufficient evidence

to support the D.H.O.'s determination that I violated prison rules on those occasions." (Doc. 1, p. 9).

With respect to the burden of proof, the constitutional standard of evidence for prison disciplinary evidence is "some evidence." Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445 (1985). "This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced.'" Id.quoting United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent at 455.

First, it is important to note that much of the petitioner's argument in support of his § 2241 petition centers around issues which this Court has already determined must be brought in a civil rights complaint. With respect to the two disciplinary actions before the Court, the petitioner notably argues that the disciplinary report initiated by Frye regarding his work in Food Service, contains accusations that he glared at her and that "she interpreted it as a threat." White contends that there is no evidence to support the accusation that he "threatened" Frye. White's argument in this regard is moot, because the DHO did not find him guilty of threatening but rather of the lessor charge of refusing to accept a program assignment.[3] In reaching her decision, the DHO , considered the eyewitness testimony of Fry, as provided in the Incident Report, documentary evidence in the

---

[3] 28 C.F.R. 541.17(f) provides that the DHO shall find that the inmate either: "(1) Committed the prohibited act charged and/or a similar prohibited act if reflected in the Incident Report; or (2) Did not commit the prohibited act charged or a similar prohibited act if reflected in the Incident Report.

form of a memorandum from D. Hilton ["Hilton"], Cook Supervisor, who witnessed White's refusal to work; and White's statement at the disciplinary hearing that he did not threaten Frye but admitted refusing to work in Food Service. Accordingly, there clearly was "some evidence" to support a finding that the petitioner was guilty of refusing a program assignment, and the DHO's decision must therefore stand with respect to Incident Report Number 1479211.

In addition, with respect to Incident Number 1479139, the DHO based her findings of guilt on the eyewitness testimony of Cain, as contained in the Incident Report. In addition, the DHO considered the documentary evidence in the form of a memorandum from Strout[4], White's testimony and that of his inmate witness. Although White denied that he was guilty of throwing his food tray and striking Cain, the DHO noted that Cain had no reason to falsely accuse White of the incident. Furthermore, White's own inmate witness testified that White pushed the tray through the slot. As previously noted, it is not the Court's prerogative to make an independent assessment of the credibility of the witnesses or weigh the evidence. So long as there is evidence to support the DHO's determination, it must stand. See Superintendent at 455-56. Here, the testimony and documents considered by the DHO clearly provided "some evidence" from which a rational conclusion could be drawn that White committed the act as charged, assaulting any person, in violation of Prohibited Act Code 224

## IV. RECOMMENDATION

Based on the foregoing, the undersigned recommends that the petitioner's §2241 petition

---

[4]J. Strout, S.O., was passing out lunch trays on the three lower range of the SHU on June 16, 2006. His memorandum indicates that he heard Cain ask White why his food trays were setting on his food slot. According to the memorandum, after responding with expletives, White threw his food trays out of his slot striking Cain in the right ankle. (Doc. 26-4, p. 6).

be **DENIED and DISMISSED WITH PREJUDICE**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: March 20, 2008

       /s/ James E. Seibert
      JAMES E. SEIBERT
      UNITED STATES MAGISTRATE JUDGE